## SMITH et. al. *versus* ROGERS & SONS.

In chancery, all parties whose rights can be affected by a decree, must be *made parties* to the suit, before that decree can be pronounced: but a sheriff, having the mere custody of monies, in litigation, is not such a party as to authorise the dismissal of a bill, because he is not joined.

An answer in chancery, responding to the allegations of a bill, and expressly denying them, will prevail, unless the bill be sustained by the testimony of two witnesses—or of one witness, and strong concurring circumstances. And proof of a fraud between two parties, in a separate and distinct transaction from the one in suit; will not be such conclusive circumstance as will sustain the allegations, denied.

In error from Limestone Circuit Court.

This suit was commenced by Rogers & Sons, by a bill in chancery, charging a fraudulent transfer of estate from John W. Smith, a judgment debtor of the complainants, to Joseph A. Smith. The answers of the Smiths denied positively the alleged fraud in the transfer—but it was in proof, that a transfer of certain slaves, made by John W. to Joseph A. Smith (which slaves were out of the jurisdiction of the Court) was attended by such circumstances, as would have induced a strong presumption of fraud—and it

was insisted that, that transaction should be extended to a transfer of a bond, made by the same parties; and which the complainants alleged was in derogation of their rights as creditors of Smith, the assignor. No testimony was produced showing fraud in the assignment of the bond; but on the bill, answer and proofs, the Court below decreed the proceeds of the assigned bond to the satisfaction of the complainants judgment against John W. Smith. It was here assigned for error.

1st. That the sheriff who held the custody of the money, collected on the bond, should have been made a party to the suit.

2d. That Barnes & Carroll who had an interest in the amount of the bond, should have been also parties, and

3d. That the Court erred in its decree, generally.

*J. L. Martin,* and *W. B. Martin,* for Plaintiffs.
*Hopkins* and *Coleman,* for Defendants.

CRENSHAW, J.—In this case the bill among other things, sets forth, that Rogers & Sons obtained judgment against John W. Smith for a large amount, and that Smith was then possessed of considerable property in land and slaves. That pending the suit he fraudulently sold the slaves, and which, soon after the sale, Joseph A. Smith removed to Florida. That he sold his land to Blackwood, in part payment for which he received a bond on the Webbs for $1500, and which bond he fraudulently assigned to the said Joseph A. Smith, who in December 1827, obtained judgment thereon for one thousand five hundred and ninety three dollars.

The bill prays a discovery, and general relief; and especially seeks to apply the money collected, or to be collected on the judgment against the Webbs, towards the satisfaction of the judgment of Rogers & Sons.

Joseph A. Smith in his answer specifically denies the fraud, and insists that the assignment of the bond on the Webbs to himself, was fair, for valuable and adequate consideration, and which consideration was debts to that amount then due, and owing from the said John W. Smith to himself.

The answer of John W. Smith admits the judgment against himself in favor of Rogers & Sons, denies fraud in the transfer of the bond on the Webbs, and in this respect is substantially the same as the answer of Joseph A. Smith.

The record presents a mass of testimony, the parts of which I deem material, will be considered in their proper place.

On the bill, answers and proofs, the Circuit Court, in substance, decreed that the avails of the judgment against the Webbs should be applied towards satisfaction of the judgment in favor of Rogers & Sons.

The errors, if any, may be embraced in two objections to the decree.

1st. That a final decree should not have been pronounced, because, all persons to be affected by it had not been made parties; and,

2d. That the decree is erroneous on the merits of the case, and that it should have been in favor of the defendants to the bill.

As to the first objection, the position is taken, that the sheriff, who was enjoined from paying over to

the plaintiff at law the money collected on the judgment against the Webbs, should have been made a party. This position is untenable, because the sheriff cannot be affected in interest by the decree, nor has he any interest in the money collected on the judgment more than to the extent of his fees, and these he is entitled to retain whether he be a party or not.

But it is further insisted, that Barnes and Carroll had an interest in the judgment against the Webbs, to the amount of their debts, and for which an order in their favor had been accepted by the attorney of the plaintiffs at law; and that they should have been made parties, the judgment being the principal subject of controversy in the present suit.

In chancery, it is a correct rule of practice, that the Court will not pronounce a final decree, unless all persons whose rights are to be affected by the decree have been made parties. I am therefore inclined to think that Barnes & Carroll should have been made parties; and that for this error, if there were none else, the decree should be reversed, at least to the extent of their interest, unless the complainants would now consent to allow them the amount of their debts.

Other slight objections have been raised by the counsel, which I consider as not very material; but will now proceed to the consideration of the main error relied on, viz: the erroneousness of the decree itself, on the merits of the case.

And here I will premise, that as to the pretended sale of the slaves by John W. Smith and their removal to Florida, the bill, the answers and the depositions taken in connection shew that the transaction

was intended as a gross fraud, and must be declared void, at least so far as concerns the creditors of Smith.

But we have no authority to set aside the sale, and decree the property to be sold in satisfaction of the complainants judgment, because the slaves are out of our jurisdiction. And though the bill contains a prayer of general relief, yet I apprehend this matter was inserted in the bill, and proof offered in its support, in order to connect it with the assignment of the bond on the Webbs, and to show that the assignment was also intended as a fraud on the complainants. From the state of the case it can be resorted to for no other purpose, and for this purpose alone, I understand the counsel as relying on it in argument.

The principal matter then in controversy is, whether the assignment of the bond to Jos. A. Smith is fraudulent and void as to the complainants, who were creditors of John W. Smith the assignor, and who it seems is insolvent.

The bill expressly charges, that it was fraudulent, without consideration, and intended to prevent satisfaction of the complainants judgment, and calls on the Smiths, the assignor and assignee to state what in particular was the consideration; and they in their answers as expressly deny the fraud, set out the consideration in debts due and owing from the elder to the younger Smith, and insist on the right which a debtor has to prefer one creditor over another.

If the transaction be in good faith, a debtor has the unquestionable right to assign his property in payment of one creditor in preference to another.

The answers then, having directly denied the most

material allegations in relation to the fraudulent assignment of the bond, the rule is, that the answers, so far as they are responsive to the bill, must prevail, unless the facts be contradicted by two witnesses, or by one witness and other equivalent circumstances.

It is therefore important to enquire, whether the case furnishes such testimony as will destroy the effect of the answers.

I will first consider the assignment of the bond as a separate transaction, and distinct from the sale of the slaves, and running them to Florida.

The testimony of McCracken, proving that John W. Smith declared he would place his property beyond the reach of the complainants, and so much of the testimony of all or any of the witnesses going to prove declarations or admissions made by John W. Smith in the absence of Joseph A. Smith, and which may affect his rights, must be rejected as illegal and inadmissible : for if the answer, on oath, of a defendant cannot be read to charge his co-defendant, or to affect his rights, much less can declarations and admissions made not in the presence of each other, be received in evidence for the same purpose.

Rejecting this testimony, and viewing the transfer of the bond as unconnected with the sale of the slaves, there is not a solitary witness who directly contradicts the most material facts contained in the answer of Joseph A. Smith. I admit that several of the witnesses prove circumstances calculated to excite suspicion against the fairness of the transfer of the bond : but bare circumstances of suspicion, without the positive proof of at least one witness, are insufficient to do away the effect of the answer.

But if the evidence of the complainants had been

positive and in direct contradiction to the facts of the answer, is not the positive testimony of the three Smiths sufficient to balance the proof? They are equal in number to the witnesses, who prove any circumstance which can affect the fairness of the transaction, and for aught that appears to the Court, are of equal credibility. They prove clearly that there were subsisting debts due from John W. to Joseph A. Smith equal in value to the debt against the Webbs, and two of them prove that the bond was transfered in satisfaction of those debts.

If then their testimony be sufficient to clear the transaction in relation to the bond, of the suspicion of fraud, created by the witnesses on the other side, the answer of Joseph A. Smith, in this particular, stands alone unimpeached, and must prevail.

But it is contended that the sale, and running the negroes to Florida, are so intimately connected with the transfer of the bond, that they must be viewed as parts of the same transaction, and that a fraud in part vitiates the whole. I am unable to discover that they are parts of one and the same transaction. I cannot see any intimate relation between, or necessary dependence of one on the other, and the record furnishes no sufficient evidence of the fact. Because Joseph A. Smith was concerned in the fraudulent sale of the negroes and running them to Florida, it does not follow as a necessary consequence nor as a violent presumption that the transfer of the bond was fraudulent, when the answers of the defendants, sustained by the unimpeached and uncontradicted testimony of three witnesses, shew that the transfer was in good faith, for adequate and valuable consideration. I am not at liberty from mere cir-

cumstances, to raise presumptions and deduce consequences, which may or may not be true. The maxim, therefore, that fraud in part, vitiates the whole transaction, has no application to the present case. The transfer of the bond was one transaction, the sale and removal of the negroes was another, fraudulent indeed, but separate and distinct from the other.

From the premises, the conclusion necessarily follows, that the decree should be reversed, the injunction dissolved, and the bill dismissed with costs.

Of this opinion are a majority of the Court.

The CHIEF JUSTICE, and Justices SAFFOLD and WHITE concur.

TAYLOR, J. and COLLIER, J. dissenting.

———

With the last Case, was closed the Decisions of the Supreme Court of Alabama, under its original organization.

———

On the 14th day of January, 1832, the Legislature of Alabama enacted a statute creating a separate Supreme Court, the members of which, under an election held in pursuance thereto, wereas follows:

Hon. ABNER S. LIPSCOMB,
Hon. REUBEN SAFFOLD,
Hon. JOHN M. TAYLOR.

The Hon. ABNER S. LIPSCOMB was chosen Chief-Justice.